## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

BENJAMIN DAVIS III,

    Plaintiff,

    v.

BALTIMORE COUNTY DEPARTMENT
OF CORRECTIONS, et al.,

    Defendants.

Civil Action No.:  ELH-21-2268

## MEMORANDUM OPINION

The self-represented plaintiff, Benjamin Davis III, filed suit pursuant to 42 U.S.C. § 1983 against the Baltimore County Department of Correction ("BCDC"), Director Gail Watts, and Officer Chadley Parsons.[1]  ECF 1.  He alleges that defendants were deliberately indifferent to a substantial risk of physical harm to him by housing him with a dangerous inmate.  ECF 1 at 4, 6.  Further, he complains about the conditions of his confinement.  *Id.* at 6.  And, he complains that he was subjected to excessive force by defendant Parsons.  *Id.* at 4, 6.  Plaintiff also asserts medical malpractice.  *Id.*

Defendants have moved to dismiss or, in the alternative, for summary judgment (ECF 8), supported by a memorandum of law (ECF 8-1) (collectively, the "Motion") and numerous exhibits. Davis opposes the Motion.  ECF 10.  He has also submitted exhibits (ECF 10-1) and an Affidavit. ECF 10-2.  Defendants replied.  ECF 13.[2]

---

[1] The Clerk shall be directed to amend the docket to reflect defendant Parsons's full name.

[2] On January 12, 2022, defendants moved for leave to amend their memorandum in response to plaintiff's opposition to their Motion.  ECF 12.  The motion shall be granted, and the amended memorandum (ECF 13) shall be considered as defendants' reply, along with the attachments (ECF 11-1; 11-2).

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6 (D. Md. 2021). For the reasons that follow, defendants' Motion, construed as a motion for summary judgment, is granted in part and denied in part.

## I.       Factual Background

### A. Davis's allegations

Davis alleges that on August 7, 2021, he was improperly housed in the Diagnostic Unit at BCDC with inmate Richard Deblois. ECF 1 at 6. Davis attests that Deblois attacked and stabbed him multiple times, causing permanent damage to Davis's right eye. *Id.*; ECF 10-2 at 1 (Davis Affidavit). Davis attempted to restrain Deblois until officers responded. ECF 10-2 at 1. Deblois allegedly responded by grabbing Davis's genitals. *Id.* Correctional staff allegedly refused to take photographs of Davis following the incident to document his injuries. *Id.* Davis avers that he received ten poorly placed sutures, causing scarring to his retina. ECF 10-2, *id.* at 1.

Davis asserts that defendant Watts deliberately housed him with Deblois. ECF 1 at 6. Furthermore, he claims that classification intake was aware that Deblois, who Davis asserts is a convicted murderer, was being housed with Davis, a nonviolent offender. ECF 10-2 at 1. Following the assault, Davis was held in restrictive housing for twelve days, and he claims that during that time he was denied access to showers, recreation time, cleaning supplies, and medical care. ECF 1 at 6; ECF 10-2 at 2. Ultimately, Davis was cleared of all institutional infractions related to the incident. ECF 10-2 at 2.

According to Davis, he was assaulted again on August 15, 2021, this time by Officer Parsons. ECF 1 at 6; ECF 10-2 at 2. Parsons allegedly threatened Davis during breakfast, calling him a snitch for filing a complaint against him. ECF 10-2 at 2. Davis attests that Parsons gave him a "questionable tray" and when he refused it, Parsons punched Davis through the open slot and called him a snitch again. ECF 10-2 at 2. Davis had filed numerous complaints regarding his

treatment, and he alleges that Parsons acted in retaliation by punching Davis in the mouth, causing "contusions and loosened teeth." ECF 1 at 6.

Davis seeks compensatory and punitive damages. *Id.* at 7.

B. Defendants' Motion

On August 6, 2021, the District Court for Baltimore County ordered Davis held without bond, pending trial. Bail Review Summary, ECF 8-5 at 2. Pursuant to Baltimore County Department of Corrections ("DOC") policy, Davis, as a new detainee, was initially assigned to diagnostic housing before his "separation and security classification can take place." ECF 8-6 (Aff. of Felicia Patilla), ¶¶ 4, 5. Classification determines the appropriate custody level of each detainee, considering their "criminal, institutional, psychological, medical, and social" history. ECF 8-7 (DOC Directive 3.5.01(III) at 2. Classification assessments are usually completed within 48 hours of arrival at BCDC. *Id.* However, since March 13, 2020, the quarantine period for new inmates has been lengthened. ECF 8-8 (Memo of March 13, 2020, from Daniel Swain to DL-Corrections) at 2.

Captain Felicia Patilla, who investigated the incident involving Davis and Deblois, avers that video of the altercation shows Davis initiating the fight with Deblois. ECF 8-6, ¶ 8. According to Patilla, on August 7, 2021, the two were talking while Deblois was sitting on his bunk with his back to Davis. *Id.*, ¶ 9-10. Deblois later turned around to face Davis and they continued talking, but eventually Davis "stood up and walked directly toward Mr. Deblois, who then stood up and struck Mr. Davis in the face." *Id.*, ¶ 12. The two began to fight, and Deblois used a "spork" to strike Davis. *Id.*, ¶ 15. Eventually, the two fought on the floor and moved out of the camera's view. *Id.*, ¶ 14.

Housing Unit Officer Ayodele was observing medication distribution in Unit 4Q when he saw Deblois and Davis in dorm #6, striking each other. ECF 8-13 (Ayodele Incident Report) at 2.

3

Ayodele called a code for additional staff to respond and both men were handcuffed and escorted from the unit.  *Id.*  Deblois reported to Ayodele that a conversation between himself and Davis had turned into a fight and he had to use a spork to defend himself.  *Id.*

On August 8, 2021, Davis reported to mental health staff that Deblois sexually assaulted him.  ECF 8-14 (McElligott Incident Report) at 2.  Davis stated that Deblois stabbed him in the eye and squeezed his genitals, which Sgt. McElligott reported to the Baltimore County Police Department's Special Victims Unit.  *Id.*; ECF 8-6, (Aff. of Felicia Patilla) ¶ 16.  He also requested that an officer interview Davis regarding the incident.  *Id.*

Baltimore County Police interviewed Davis and Deblois and reviewed video of the incident.  They determined that there was no sexual activity during the fight, but that Deblois touched Davis's genitals while trying to defend himself.  ECF 8-6, ¶ 17; ECF 8-15 (DOC Correspondence) at 2.  However, the police investigation was considered a sex offense and would remain pending while the State's Attorney decided whether to file charges.  ECF 8-15 at 2.

Following the altercation, Davis received medical treatment on August 7, 2021.  ECF 8-6, ¶ 18.  Davis had a 4-centimeter laceration on his right eyelid from the fight, for which he received five stitches.  ECF 8-16 (Clinical Notes) at 2; ECF 8-6, ¶ 19.  Davis was provided with an inmate complaint form on August 11, 2021.  *Id.*, ¶ 21.

On August 15, 2021, while 4S Housing Unit Officer Chadley Parsons was distributing meals, he approached Davis's cell.  Davis was housed alone.  Parsons Incident Report, ECF 8-17 at 2.  Parsons pushed a tray through the food port, but Davis allegedly pushed the tray back and attempted to grab Parsons.  *Id.*  Parsons struck Davis once through the food port to stop Davis from grabbing his arm and ordered Davis to remove his arm from the port, but Davis refused.  *Id.*  Davis told Supervisor Sergeant Okome he threw the tray "because he wanted a hard tray."  *Id.*  Parsons

punched Davis in the mouth.  *Id.*  Davis was seen by medical and cleared to stay in his housing unit.  *Id.*

Davis filed inmate complaint forms on August 11, 14, and 15, 2021.  *See* ECF 8-18 at 2, 4, 7.  Davis's complaints were referred to Captain Patilla for investigation on August 16, 2021.  *Id.* at 3, 5-7.  On August 17, 2021, Davis was released on his own recognizance with pretrial supervision.  Bail Review Order, ECF 8-19 at 5.  This suit followed on September 3, 2021.

## II.       Standards of Review

Defendants' motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56.  *See* ECF 8.  A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure.  *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss."  *Bosiger v. U.S. Airways, Inc.,* 510 F.3d 442, 450 (4th Cir. 2007).  Under Rule 12(b)(6), however, a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d).  If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland,* 672 F. App'x 220, 222 (4th Cir. Nov. 29, 2016) (per curiam).

A court may not convert a motion to dismiss to one for summary judgment sua sponte, unless it gives notice to the parties that it will do so.  *See Laughlin v. Metro Washington Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998) (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including

conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.,* 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Adams Housing, LLC*, 672 F. App'x at 622 ("The court must give notice to ensure that the party is aware that it must 'come forward with all of [its] evidence.'") (citation omitted). However, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin,* 149 F.3d at 261.

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). But, this discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours and Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2012); *see Putney v. Likin*, 656 F. App'x 632, 638-39 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transp.*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the

grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)).  To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery.  Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

"[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC,* 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted), *rev'd on other grounds sub nom. Gardner v. Ally Fin., Inc.*, 514 Fed. App'x 378 (4th Cir. 2013) (per curiam).  A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 874-75 (4th Cir. 2019); *Gordon v. CIGNA Corp.*, 890 F.3d 463, 479 (4th Cir. 2018); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (citations omitted).  But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature.  And, a court "should hesitate before denying a Rule 56(d) motion

when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Harrods*, 302 F.3d at 244 (internal citations omitted).

According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted); *see also Putney*, 656 F. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). Moreover, "[t]his is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 F. App'x at 638.

Davis has filed an Affidavit concerning the facts of the case. ECF 10-2. But, he has not filed an Affidavit under Rule 56(d). And, I am satisfied that it is appropriate to address the Motion as one for summary judgment, as this will facilitate resolution of the case.

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *see also Cybernet, LLC v. David*, 954 F.3d 162, 168 (4th Cir. 2020); *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018); *Iraq Middle Mkt. Dev. Found v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017). To avoid summary judgment, the nonmoving party must demonstrate that there is a genuine dispute of material fact so as to preclude the award of

summary judgment as a matter of law. *Ricci v. DeStefano*, 557 U.S. 557, 585-86 (2009); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 585-86 (1986); *see also Gordon v. CIGNA Corp*., 890 F.3d 463, 470 (4th Cir. 2018).

The Supreme Court has clarified that not every factual dispute will defeat a summary judgment motion. "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id*. at 248.

There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.; *see CTB, Inc. v. Hog Slat, Inc*., 954 F.3d 647, 658 (4th Cir. 2020); *Variety Stores, Inc*., 888 F.3d at 659; *Sharif v. United Airlines, Inc*., 841 F.3d 199, 2014 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2014).

The nonmovant "must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015) (internal quotation marks omitted). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

9

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [its] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004); *see Celotex*, 477 U.S. at 322-24.  Notably, "[u]nsupported speculation is not sufficient to defeat a summary judgment motion." *Felty v. Graves-Humphreys Co*., 818 F.2d 1126, 1128 (4th Cir. 1987); *see also, e.g.*, *Reddy v. Buttar*, 38 F.4th 393, 403-04 (4th Cir. 2022); *CTB, Inc.*, 954 F.3d at 659; *Harris v. Home Sales Co*., 499 Fed. App'x 285, 294 (4th Cir. 2012).

The court must view all of the facts, including reasonable inferences to be drawn from them, in the light most favorable to the nonmoving party.  *Ricci*, 557 U.S. at 585-86; *Matsushita Elec. Indus. Co*., 475 U.S. at 587; accord *Hannah P. v. Coats*, 916 F.3d 327, 336 (4th Cir. 2019); *Variety Stores, Inc*., 888 F.3d at 659; *Gordon*, 890 F.3d at 470; *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).  But, "to avoid summary judgment, the non-moving party's evidence must be of sufficient quantity and quality as to establish a genuine issue of material fact for trial.  Fanciful inferences and bald speculations of the sort no rational trier of fact would draw or engage in at trial need not be drawn or engaged in at summary judgment." *Local Union 7107 v. Clinchfield Coal Co.*, 124 F.3d 639, 640 (4th Cir. 1997).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; accord *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016).  Thus, in considering a summary judgment motion, the court may not make credibility determinations. *Kellen v. Lott*, No. 21-6928, 2022 WL 2093849, at *1 (4th Cir. June 10, 2022) (per curiam); *Betton v. Belue*, 942 F.3d 184, 190 (4th Cir. 2019); *Wilson v. Prince George's Cty*., 893 F.3d 213, 218-

19 (4th Cir. 2018); *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007). In the face of conflicting evidence, such as competing affidavits, summary judgment ordinarily is not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility. *See Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).

That said, "a party's 'self-serving opinion . . . cannot, absent objective corroboration, defeat summary judgment.'" *CTB, Inc.*, 954 F.3d at 658-59 (quoting *Williams v. Giant Food Inc.*, 370 F.3d 423, 433 (4th Cir. 2004)). But, if testimony is based on personal knowledge or firsthand experience, it can constitute evidence of disputed material facts, even if it is uncorroborated and self-serving. *Lovett v. Cracker Barrel Old Country Store, Inc.*, 700 Fed. App'x 209, 212 (4th Cir. 2017). Indeed, "'a great deal of perfectly admissible testimony fits'" the "'description'" of "'self-serving.'" *Cowgill v. First Data Technologies, Inc.*, ___ F. 4th ___, 2022 WL 2901043, at *9 (4th Cir. July 22, 2022) (citing *United States v. Skelena*, 692 F.3d 725, 733 (7th Cir. 2012)).

Davis is self-represented. Therefore, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see* Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice"); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *accord Bala v. Cmm'w of Va. Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp.*, 477 U.S. at 323-24).

11

### III.    Section 1983

Section 1983 of Title 42 of the United States Code provides that a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  42 U.S.C. § 1983; *see, e.g.*, *Filarsky v. Delia*, 566 U.S. 377 (2012); *see also Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379 (4th Cir. 2014), *cert. denied sub nom. Balt. City Police Dep't v. Owens*, 575 U.S. 983 (2015).  However, § 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'"  *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)).  In other words, § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief."  *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011), *cert. denied*, 565 U.S. 823 (2011); *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009); *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997).  The phrase "under color of state law" is an element that "is synonymous with the more familiar state-action requirement—and the analysis for each is identical."  *Philips v. Pitt Cty. Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 929 (1982)).

Of relevance here, § 1983 also requires a showing of personal fault based upon a defendant's own conduct.  *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (stating that

for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, the plaintiff must affirmatively show that the official acted personally to deprive the plaintiff of his rights).  Thus, there is no respondeat superior liability under § 1983.  *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017); *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

## IV.   Discussion

### A.   Baltimore County Department of Correction

Defendants argue that Baltimore County DOC, as a county agency, is non sui juris, meaning that it is not an entity subject to suit; it cannot be sued independently from Baltimore County.  ECF 8-1 at 1, 7.  As DOC is simply an agency of Baltimore County and Davis does not allege any wrongdoing by Baltimore County, the suit shall be dismissed as to DOC.  *See Borkowski v. Balt. Cty.*, 414 F.Supp. 3d 788, 804 (D. Md. 2019) (finding the Baltimore County Police Department is non sui juris because it is an agency of Baltimore County) (quoting *James v. Frederick Cty. Pub. Schs.*, 441 F.Supp.2d 755, 758 (D. Md. 2006) (internal citations omitted)).

### B.   Exhaustion

Defendants contend that the remainder of Davis's Complaint is subject to dismissal, pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e, because his claims have not been properly exhausted through the administrative remedy procedure.

The PLRA provides, in pertinent part, 42 U.S.C. § 1997e(a):

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."  42 U.S.C. § 1997e(h).  The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003), *aff'd*, 98 Fed. App'x. 253 (4th Cir. 2004).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner plaintiff.  The failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants.  *See Jones v. Bock*, 549 U.S. 199, 215-16 (2007); *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).  Nevertheless, a claim that has not been exhausted may not be considered by this Court.  *See Bock*, 549 U.S. at 220.  In other words, exhaustion is mandatory, and a court usually may not excuse an inmate's failure to exhaust.  *See Ross v. Blake*, 578 U.S. 632, 639 (2016).

Davis asserts that he was not permitted to pursue "proper remedies as requested."  ECF 10-1 at 4.  But, he has submitted copies of an Inmate Complaint Form that he filed on August 15, 2021.  ECF 10-1 at 7-8.

In any event, Davis was not a prisoner as defined by the PLRA at the time he filed the instant complaint.  *See Cofield v. Bowser*, 247 Fed. App'x 413, 414 (4th Cir. 2007) (per curiam) (A plaintiff's status at the time a lawsuit is initiated is determinative as to whether PLRA exhaustion requirements apply).  By defendants' own admission, Davis was released from Baltimore County Detention Center on August 17, 2021, and therefore not "incarcerated or

detained in any facility." 42 U.S.C. § 1997e(h); *see* ECF 8-19.  As Davis was not a prisoner when he filed suit on September 3, 2021, the PLRA exhaustion requirement does not apply to his claims against Director Watts and Officer Parsons.  *Cofield*, 247 Fed. App'x at 414 ("A former inmate who has been released is no longer 'incarcerated or detained' for the purposes of § 1997e(h) and therefore does not qualify as a 'prisoner' subject to the PLRA.").

### C.  Director Gail Watts and Correctional Officer Parsons

At the time of the events in question, Davis was a pretrial detainee at BCDC.  The Eighth Amendment to the Constitution forbids punishment that involves "the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).  The Due Process Clause of the Fourteenth Amendment prohibits punishment of pretrial detainees based on essentially the same principles as those applied to post-conviction detainees under the Eighth Amendment.  *Bell v. Wolfish*, 441 U.S. 520 (1979); *Williamson v. Stirling*, 912 F.3d 154, 177 (4th Cir. 2018).  Indeed, "[d]ue process rights of a pretrial detainee are at least as great as the eighth amendment protections available to a convicted prisoner." *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992).

"However, not all Eighth Amendment violations are the same: some constitute 'deliberate indifference,' while others constitute 'excessive force.'" *Thompson v. Commonwealth*, 878 F.3d 89, 97 (4th Cir. 2017).  "The deliberate indifference standard generally applies to cases alleging failures to safeguard the inmate's health and safety, including failing to protect inmates from attack, maintaining inhumane conditions of confinement, or failing to render medical assistance." *Id.* at 98.

#### 1.  Failure to Protect

"The Eighth Amendment's prohibition on cruel and unusual punishments imposes certain basic duties on prison officials." *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016) (citing *Farmer*, 511 U.S. at 832).  Those duties "include maintaining humane conditions of confinement,

including the provision of adequate medical care and . . . 'reasonable measures to guarantee the safety of the inmates.'" *Raynor* 817 at 127. But, "not every injury suffered by a prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety. *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015).

In order to prevail on a claim of failure to protect from violence, Davis must establish that defendants exhibited deliberate or callous indifference to a specific known risk of harm. *See Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987). "Prison conditions may be 'restrictive and even harsh,' but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective, any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994) (citations omitted).

However, a prison official cannot be found liable under the Eighth Amendment "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837; *see also Rich v. Bruce*, 129 F.3d 336, 339-40 (4th Cir. 1997). A two-part inquiry that includes both an objective and a subjective component must be satisfied to establish liability. *See Raynor*, 817 F.3d at 127.

Objectively, a plaintiff "must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury" or substantial risk of either injury. *Danser v. Stansberry*, 772 F.3d 340, 346-47 (4th Cir. 2014). The objective inquiry requires the court to "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993).

16

Subjectively, a plaintiff must establish that the prison official had "a sufficiently culpable state of mind" amounting to "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834.  Evidence establishing a culpable state of mind requires actual knowledge of an excessive risk to the prisoner's safety or proof that the prison official was aware of facts from which an inference could be drawn that a substantial risk of serious harm existed and that the inference was drawn. *Id*. at 837.  A plaintiff may "prove an official's actual knowledge of a substantial risk 'in the usual ways including inference from circumstantial evidence" so that "'a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Raynor*, 817 F.3d at 128.

Actual knowledge of a substantial risk does not alone establish liability.  Where prison officials responded reasonably to a risk, they may be found free of liability.  *Farmer*, 511 U.S. at 844.  "In failure to protect cases, prison guards have no constitutional duty to intervene in the armed assault of one inmate upon another when intervention would place the guards in danger of physical harm." *Raynor*, 817 F.3d at 128 (internal quotation marks omitted) (quoting *Prosser v. Ross*, 70 F.3d 1005, 1008 (8th Cir. 1995)); *Thompson*, 878 F.3d at 108 ("[P]rison officials are not liable if taking action would endanger their own lives or if the harm occurred despite their reasonable efforts to prevent it.").  Failure to take any reasonable action in an ongoing assault, however, can amount to deliberate indifference.  *See Cox v. Quinn*, 828 F.3d 227, 236 (4th Cir. 2016) (holding correctional officers were deliberately indifferent to prisoner's substantial risk of serious harm where correctional officers failed to take reasonable action after prisoner repeatedly informed them that he feared for his safety before he was beaten); *Winfield v. Bass*, 106 F.3d 525, 532 (4th Cir. 1997) (en banc) (finding no deliberate indifference where unarmed prison officials did not intervene in an armed attack immediately but called for backup).

Here, the parties dispute who initiated the altercation between Davis and Deblois as well as the extent of Davis's injuries and the number of stiches Davis received for the laceration to his eyelid. Regardless, even assuming Davis established that the injury to his eye was objectively serious, he cannot show that Watts had a sufficiently culpable state of mind. Nothing in the record demonstrates that Watts knew Deblois posed a serious risk of physical harm to Davis.

The charges pending against a pretrial detainee may be considered during the classification process. But, that does not support a finding that Watts knew or should have inferred that Deblois's pending criminal charges meant that he specifically posed a risk to Davis's safety.[3] Moreover, there is no evidence that demonstrates that Watts personally decided that Davis and Deblois should be placed together in diagnostic housing.

Liability does not attach merely because of Watts's position or title. Yet, that is clearly the basis of the claim. Therefore, Watts is entitled to summary judgment on this claim.

2. Conditions of Confinement

Davis asserts his conditions of confinement were unconstitutional while he was in restrictive housing because he was denied access to showers, recreation, cleaning supplies, and medical care for the injuries he sustained during the altercation with Deblois. ECF 1 at 6; ECF 10. In considering a "conditions of confinement claim," a court must again employ *Farmer*'s two-pronged "deliberate indifference" test, considering first whether there was a deprivation of a basic human need that was objectively sufficiently serious. *See Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995); *see also Roberts v. Taniguchi*, JKB-12-cv-1187, WL 5252288, at *5 (D. Md. Oct. 23,

---

[3] Notably, defendants also submit with their reply the results of a Maryland Judiciary Public Case Search. The results show that Davis himself has been convicted of attempted second degree murder and second-degree assault. ECF 11-1 at 4-5; 11-2 at 3. As such, Davis would be considered a violent or dangerous detainee by his own argument.

2012) (stating that a plaintiff must show "conditions which 'deprive inmates of the minimal civilized measure of life's necessities.'") (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

Davis must also show "evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993). But "[j]ail employees may not ignore a dangerous condition of confinement on the ground that the complaining inmate shows no serious current symptoms." *Webb v. Deboo*, 423 F. App'x 299, 300 (4th Cir. 2011) (citing *Helling v. McKinney*, 509 U.S. 25, 33 (1993)). Thus, constitutional harm also includes whether a pretrial detainee was exposed to "a substantial risk of harm." *Id.*

The Fourth Circuit has "emphasiz[ed] that the correct standard to apply when considering the objective prong…is whether there is an 'extreme deprivation' and 'a serious or significant physical or emotional injury resulting from the challenged conditions' or…'a substantial risk of such serious harm' resulting from…exposure to the challenged conditions." *Scinto v. Stansberry*, 841 F.3d 219, 229 n.3 (4th Cir. 2016) (quoting *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003)). "*Some* conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise…" *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991) (emphasis in original). Moreover, the length of confinement "cannot be ignored in deciding whether the confinement meets constitutional standards." *Hutto v. Finney*, 437 U.S. 678, 686 (1978).

Moreover, to demonstrate the subjective component, a plaintiff must show deliberate indifference, meaning "the official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Porter v. Clarke*, 923 F.3d 348, 361 (4th Cir. 2019) (quoting *Scinto*, 841 F.3d at 225). "Deliberate indifference is 'more than mere negligence,' but 'less than acts or omissions [done] for the very purpose of causing harm or with knowledge that harm will result.'" *Scinto*, 841 F.3d

at 225 (alternation in original) (quoting *Farmer*, 511 U.S. at 837). A plaintiff may satisfy this standard by "prov[ing] by circumstantial evidence that a risk was so obvious that it had to have been known." *Makdessi*, 789 F.3d at 136. "[O]nce prison officials become aware of a problem with prison conditions, they cannot simply ignore the problem, but should take corrective action when warranted." *Williams*, 952 F.2d at 826.

Absent exceptional circumstances, "complete deprivation of exercise for an extended period of time violates Eighth Amendment prohibitions against cruel and unusual punishment." *Mitchell v. Rice*, 954 F.2d 187, 191 (4th Cir. 1992). It is well understood that "some form of regular outdoor exercise is extremely important to the psychological and physical well being of…inmates." *Shorter v. Baca*, 895 F.3d 1176, 1185-86 (9th Cir. 2018). In considering the totality of the circumstances surrounding the denial of exercise, the court looks at the "overall duration of incarceration, the length of time for which prisoners are locked in their cells each day, and the practical opportunities for the institution to provide prisoners with increased exercise opportunities." *Id.* (alteration and internal quotation marks omitted).

Additionally, a restriction to two showers or exercise periods per week might not violate "the Eighth Amendment if confined to a relatively short period of maximum confinement," but if extended over a period of years and perhaps indefinitely, "the rule may be quite different." *See Sweet v. S. Carolina Dep't of Corr.*, 529 F.2d 854, 866 (4th Cir. 1975); *see also Mitchell*, 954 F.2d at 191 (explaining that a "complete deprivation of exercise for an extended period of time violates Eighth Amendment prohibitions against cruel and unusual punishment"). For example, three days without showers might not violate the Eighth Amendment, *see Shakka*, 71 F.3d at 167-68, whereas two months without showers and recreation can be sufficient to support an Eighth Amendment claim. *See Brown v. Lamanna*, 304 F. App'x 206, 208 (4th Cir. 2008) (unpublished).

Defendants assert that Davis was not subjected to the alleged conditions for an extended period of time, but do little else to respond to his allegations.  Specifically, they do not deny Davis's contention that he was denied access to the showers to recreation for the entirety of his time in restrictive housing, nor do they respond to his claim that he was not permitted to receive medical attention during this time.  The Motion responds only to the allegation that he was denied cleaning supplies, and on that point defendants fail adequately to respond.

In support of their argument, defendants submit various emails from 2020, which include directives concerning the distribution and use of cleaning supplies.  Defendants insist that extensive procedures were instituted in response to the Covid-19 pandemic and that it is "unlikely" that Davis was without "some access" to cleaning supplies.  ECF 8-1 at 10.  However, this court must view the evidence in the light most favorable to Davis as the nonmoving party, and on this limited record, I cannot determine the totality of circumstances experienced by Davis and whether the conditions under which he was held amount to a constitutional violation.

Therefore, summary judgment is inappropriate at this juncture.  Davis's conditions of confinement claim shall proceed.

### 3.  Excessive Force and Retaliation

Davis asserts that Parsons used excessive force, in violation of the Fourteenth Amendment.  To prevail, Davis must show that "the use of force is deliberate – *i.e.*, purposeful or knowing." *Kingsley v. Hendrickson*, 576 U.S. 389, 396 (2015).  Davis need not detail his alleged assailant's subjective state of mind.  Rather, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable."  *Id.* at 396-97; *see also Dilworth v. Adams,* 841 F.3d 246, 255 (4th Cir. 2016). Objective reasonableness "turns on the 'facts and circumstances of each particular case.'"  *Kingsley*, 576 U.S. at 397 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).  The court must "make this determination from the perspective of a

reasonable officer on the scene, including what the officer knew at the time, not with 20/20 vision of hindsight." *Id.* at 397.

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). The court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

The absence of significant injury alone is not dispositive of a claim of excessive force, however. *Wilkins v. Gaddy*, 559 U.S. 34 (2010). The extent of injury incurred is one factor indicative of whether the force used was necessary in a particular situation. But, if force is applied maliciously and sadistically liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id*. at 38.

The parties agree that the incident in question occurred on August 15, 2021, during the distribution of breakfast trays, and that Davis was confined to his cell at all times. However, this is where the parties' accounts diverge. The Incident Report completed by Parsons states that when Parsons opened the food port to give Davis a breakfast tray, Davis pushed the tray back and attempted to grab Parsons. ECF 8-17. In response, Parsons struck Davis's face to prevent him from grabbing him and ordered Davis to remove his arm from the port. *Id.* In contrast, Davis attests that Parsons threatened him, calling him a snitch, before giving him a "questionable" food tray. ECF 10-2 at 2. When Davis refused the tray, Parsons punched him in the face, calling him a snitch once again. *Id.* Davis states that he at no time attacked Parsons. *Id.* As such, there is a genuine dispute as to who incited the physical altercation between Davis and Parsons.

22

Davis submitted a grievance in which he detailed Parsons calling him a "Snitch Bitch" and telling him to lie down before Davis "got beat up."  ECF 10-1 at 7.  Davis appears to contend that Parsons was acting in retaliation for grievances filed by Davis regarding Parson's denial of mandatory shower and recreation time.

"The First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000).  To state a claim of retaliation for exercising First Amendment rights, a plaintiff must show that (1) the plaintiff engaged in protected First Amendment activity; (2) the defendant took some action that adversely affected the First Amendment rights; and (3) there was a causal relationship between the protected activity and the defendant's conduct.  *See Constantine v. Rectors & Visitors of George Mason Univ*., 411 F.3d 474, 499 (4th Cir. 2005).  A plaintiff can establish this element of retaliatory conduct if the defendant took an action that would "deter 'a person of ordinary firmness' from the exercise of First Amendment rights." *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017) (quoting *Constantine*, 411 F.3d at 500).

"Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner v. Safley*, 482 U.S. 78, 84 (1987); *see Desper v. Clarke*, 1 F.4th 236, 242 (4th Cir. 2021).  Nevertheless, "the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large," although "incarceration does not divest prisoners of all constitutional protections."  *Shaw v. Murphy*, 532 U.S. 223, 228-29 (2001).  "[A] prison inmate retains those First Amendment rights that are not inconsistent with the status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974).  Specifically, the Fourth Circuit has said that an

inmate's "right to file a prison grievance free from retaliation" is protected by the First Amendment. *Booker v. S. Carolina Dep't of Corr.*, 855 F.3d 533, 545 (4th Cir. 2017).

The plaintiff must demonstrate a causal connection between his First Amendment activity and the alleged retaliatory action. *See Constantine*, 411 F.3d at 501. The showing can be based on circumstantial evidence, such as evidence that the defendant was aware of the First Amendment activity and that the retaliation took place within some "temporal proximity" of that activity. *Id.*

Defendants do not dispute the assertion of a retaliation claim. Indeed, they do not respond to Davis's claim of retaliation in the legal analysis section of their memorandum. Based on this record, I shall allow the claim to proceed.

## V.     Conclusion

Defendants' qualified immunity defense is unavailing because there exists a material dispute of fact regarding whether the conduct allegedly violative of Davis's constitutional rights actually occurred. *See Willingham v. Crooke*, 412 F.3d 553, 559 (4th Cir. 2005). Although it is true that qualified immunity is ordinarily determined at the summary judgment stage of litigation, *see Wilson v. Kittoe*, 337 F.3d 392, 397 (4th Cir. 2003), the defense of "[q]ualified immunity does not, however, override the ordinary rules applicable to summary judgment proceedings." *Willingham*, 412 F.3d at 559 (citing *Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992)).

For the reasons set forth earlier, defendants' Motion, construed as a motion for summary judgment, will be granted in part and denied in part. The Complaint shall be dismissed as to BCDC. Summary judgment is entered in favor of defendant Watts as to Davis's failure to protect claim. Davis's conditions of confinement, excessive force, and retaliation claims shall proceed.

It is anticipated that discovery will be necessary to complete the factual record. Therefore, counsel shall be appointed to represent Davis.

A separate Order follows.


<u>August 31, 2022</u>                                    <u>                /s/                    </u>
Date                                                     Ellen L. Hollander
                                                         United States District Judge